# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SONDRA CAPOBRES,<br><br>     Petitioner,<br><br>     vs.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>     Respondent. | Case No. CV 1:09-682-REB<br><br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Now pending before the Court is Sondra Capobres' Petition for Review (Docket No. 2), seeking review of the Social Security Administration's final decision denying her application for disability insurance benefits under Title II of the Social Security Act. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

Petitioner first applied for Social Security disability benefits on June 24, 2004, when she was 44 years old. AR 61. Petitioner's application for benefits is based on the following alleged impairments: Ehlers-Danlos Syndrome ("EDS"), scoliosis, arthritic headache, shoulders, multiple knee injuries, muscle spasms, and hip pain. AR 68.

Petitioner's disability benefits application was denied initially and, again, on reconsideration. AR 37, 38, 49, 56. Petitioner made a timely request for a hearing before

an Administrative Law Judge ("ALJ").  AR 46.  On January 25, 2007, ALJ Michael J.

Kilroy held a telephonic hearing from Billings, Montana; Petitioner appeared with

counsel and testified from Boise, Idaho.  AR 379.  Vocational expert, Delane H. Hall,

also appeared and testified at the hearing.  AR 16.

Originally, Petitioner alleged an onset date of February 1999 when she stopped

working.  AR 68.  However, at the hearing, Petitioner amended her onset date to March

26, 2004.  AR 16.[1]  In addition, the ALJ determined that her last date insured was June

30, 2004.  AR 18.  Thus, to be eligible for disability benefits under Title II, Petitioner

must prove that she was disabled sometime between March 26 and June 30, 2004.

On October 1, 2007, the ALJ issued a decision denying Petitioner's application.

AR 13-26.  The ALJ determined that Petitioner was not under a disability within the

meaning of the Social Security Act from March 26, 2004 to the date last insured.  AR 16.

The ALJ found that Petitioner's testimony regarding her symptoms during the relevant

time period was not consistent with the information she was providing her doctors at that

time.  AR 21.  The ALJ noted that Petitioner's pain complaints increased after June 30,

2004; however, Petitioner's last date insured was June 30, 2004, so the ALJ deemed this

evidence not relevant to his decision.  AR 24.

---

[1] There is evidence in the Administrative Record reflecting that Petitioner did not
understand the consequences of making this change at her hearing.  However, this issue is not
raised on appeal.

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner timely requested review from the Appeals Council. AR 5. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that the Commissioner's decision is not supported by substantial evidence and is in conflict with rules, regulations, and the law. *Petitioner's Opening Brief*, p. 2 (Docket No. 10). Specifically, Petitioner asserts that: (1) the ALJ did not properly evaluate the opinions of Petitioner's treating physician, Barbara Quattrone; (2) the ALJ did not properly evaluate Petitioner's credibility regarding her pain and other symptoms; and (3) the ALJ did not include all of Petitioner's limitations in the residual functional capacity assessment. *Id.* Petitioner requests that the Court reverse the ALJ's decision and order the immediate payment of benefits or, alternatively, remand the case for proper consideration of the evidence.

As explained more fully below, the Court will deny the Petition. This is a difficult case given the nature of Petitioner's underlying condition, a chronic and inherited disease. Clearly, Petitioner has lived with EDS her entire life. However, her symptoms have changed over time as have the severity of her symptoms. The ALJ's decision focused upon the status of Petitioner's impairments during the relevant time period. In light of the evidence in the record as a whole and the time period relevant to the disability determination, the Court finds that the ALJ's decision denying benefits was free of legal error and based on substantial evidence in the record.

**MEMORANDUM DECISION AND ORDER - 3**

### III.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*,

**MEMORANDUM DECISION AND ORDER - 4**

981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## IV. DISCUSSION

### A. Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not perform SGA after her alleged disability onset date. AR 18.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had a combination of impairments that, together, are severe. AR 18. These impairments include frozen right shoulder, arthralgias, degenerative disc disease of the cervical spine, benign thoracic spine mass (left paraspinal mass), and a history of connective tissue disorder, specifically Ehlers-Danlos Syndrome. *Id.*[2]

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). Where, as here, the claimant's impairments neither meet nor equal one of the listed impairments (AR 18-19), the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.*

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ must first assess Petitioner's residual functional capacity, which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ then considers Petitioner's past work in light of

---

[2] Ehlers Danlos Syndrome is a rare, inherited, and chronic disorder that affects connective tissues throughout the body. *See* http://www.mayoclinic.org/ehlers-danlos-syndrome (Last visited March 10, 2011). Symptoms "range from the imperceptible to the disabling." *Id.*

her residual functional capacity.  In the instant case, the ALJ determined that Petitioner

had the residual functional capacity to perform light work with some additional

limitations that did not preclude her from performing her past work as a medical

transcriptionist.  AR 26.  Accordingly, Petitioner was not disabled with in the meaning of

the Social Security Act.

Nonetheless, the ALJ alternatively considered the fifth step of analysis.  In the fifth

and final step of the sequential analysis, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such

alternate work exists in significant numbers in the national economy.  20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v.*

*Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, she is

not disabled; if the claimant is not able to do other work and meets the duration

requirement, she is disabled.  Here, based on the vocational expert's testimony, the ALJ

found that Petitioner has the capacity to perform other sedentary unskilled work, such as

food and beverage order clerk and call-out operator.  AR 26.

## B.    The ALJ's Evaluation of the Opinion from Petitioner's Treating Physician

The opinions of treating physicians are given greater weight than those of

examining but non-treating physicians or physicians who only review the record.  "Cases

in this circuit distinguish among the opinions of three types of physicians: (1) those who

treat the claimant (treating physicians); (2) those who examine but do not treat the

claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* Thus, where a treating physician's opinion is not contradicted by another doctor, the treating physician's opinion may be rejected only for "clear and convincing reasons." *Id.* In contrast, where, as here, a treating physician's opinion is contradicted by another doctor, the ALJ may reject the opinion of the treating physician for "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*

After reviewing the medical record and considering the opinion of treating physician, Dr. Barbara Quattrone, M.D., in context, the Court finds that the ALJ's reasons for rejecting Dr. Quattrone's opinions are sufficiently specific and legitimate and are supported by substantial evidence in the medical record. The ALJ's reasons for rejecting Dr. Quattrone's opinion are two-fold: (1) Dr. Quattrone treated claimant after June 30, 2004, the date last insured, and (2) the medical records for the time period relevant to the decision belie Dr. Quattrone's opinion and Plaintiff's claim of total disability. AR 24. The ALJ noted that Petitioner's condition appeared to be worsen over time; however, focused upon the time period between March 26, 2004 and June 30, 2004, the ALJ found that Petitioner's impairments, though severe, were not so severe as to render her "disabled" within the meaning of the Social Security Act.

Petitioner takes issue with the ALJ's first reason for rejecting Dr. Quattrone's analysis, emphasizing Ninth Circuit case law that states unequivocally that "reports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1033 n. 3 (9th Cir. 2007) (noting that medical reports made after the claimant's disability insurance lapsed were relevant and were properly considered). As the Ninth Circuit describes, "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith*, 849 F.2d 1225 (citing *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir.1985)).

The ALJ's written decision states that Dr. Quattrone's opinion was rejected, because it was "outside the relevant time period for [the] decision" and "not . . . controlling or persuasive before June 30, 2004." *Id.* This determination does not constitute error, because Dr. Quattrone's opinion was not offered as a retrospective analysis of Petitioner's impairments between March 26 and June 30, 2004. Although Dr. Quattrone opined that the earliest date Petitioner's symptoms and limitations were present was February 1999, she did not specifically discuss the nature and extent of Petitioner's limitations in the relevant timeframe. AR 237. This is especially important where, as here, Petitioner's diagnosis is constant, but her symptoms and their severity have changed over time.

More importantly, as the ALJ also noted in the decision, the medical records pertaining to the relevant time period, including the opinion of Petitioner's then-treating physician, Dr. Laura M. Tangredi, D.O., do not support Dr. Quattrone's analysis of Petitioner's condition completed nearly two and a half years after her last date insured. The medical records reflect that Petitioner was diagnosed with Ehlers-Danlos Syndrome Type III in 2002. (AR 161, 321). The symptoms of Hypermobility type EDS include unstable joints, muscle fatigue and pain, chronic degenerative joint disease, and advanced premature osteoarthritis with chronic pain.[3]

Petitioner's symptoms and alleged limitations are generally consistent with the EDS diagnosis. The ALJ simply found Dr. Quattrone's opinion regarding the extent of Petitioner's limitations in the relevant time period inconsistent with the medical evidence available from that time period.

In 2003, Petitioner visited the chiropractor regularly to treat her pain and muscle spasms in her shoulders, hip, and back. AR 139-46, AR 285-96. At times, this pain was so great it caused Petitioner to vomit. However, as the ALJ noted, during that same time period, Petitioner was homeschooling her children, an endeavor the ALJ found reflected a degree of functional capacity inconsistent with a finding of total disability. (AR 24).

In January 2004, Petitioner began seeing treating physician, Dr. Tangredi, for complaints regarding a possibly frozen right shoulder and history of EDS. AR 164. Dr. Tangredi referred Petitioner to an orthopedic specialist, Kevin J. Triggs, M.D. (AR 154).

_____

[3] http://www.mayoclinic.com/health/ehlers-danlos-syndrome/DS00706/DSECTION =symptoms  (last visited March 10, 2011).

Dr. Triggs ordered two MRI's: one of Petitioner's right shoulder and the other of her cervical spine. (AR 155). The MRI's were performed on March 26, 2004, Petitioner's alleged on-set date. (AR 149-152).

The MRI of the cervical spine did not show any unusual disease, disc herniation, or stenosis, though it did reveal mild bilateral forminal stenosis at the C4-5 level, and multiple level degenerative disc disease. AR 149-50. The MRI of the right shoulder indicated some AC joint degenerative disease but did not show "any obvious unusual pathology." AR 147. Dr. Triggs diagnosed Petitioner with a frozen right shoulder. AR 147. Petitioner had a frozen left shoulder in 2001. AR 130-36. Both likely stem from EDS and were largely resolved, at least for a time, through intensive physical therapy.

On October 28, 2004, an examining physician, Dr. Steven A. Moskowitz, made the following summary report of her condition based on a "comprehensive internal medicine consultation" performed just four months after the Petitioner's last date insured:

> The [Petitioner] hears and speaks normally; her fine finger movement is intact, bilaterally. Repetitive firm manipulation and fine grabbing and grasping are not impaired at this time. she can use both hands for holding small writing instruments or tools, buttoning buttons, grabbing, grasping, pinching, fingering, and manipulating objects. She is able to stand, sit, walk, move about the office today, and transfer without assistance. She is full weight bearing. She uses no assistive devices to ambulate. She transfers well, and she arises without difficulty from a seated position. Bending, stooping, and squatting are not impaired at this time. She can lift 40 pounds occasionally and 30 pounds frequently. She can stand or walk six hours in the course of an eight-hour workday, as long as she is given appropriate rest breaks. Repetitive firm manipulation and fine grabbing and grasping are not impaired.

(AR 161-62). This report is inconsistent with Dr. Quattrone's opinion concerning the

extent of Petitioner's limitations.[4]

In addition, Petitioner's treating physician during the relevant time period, Dr.

Tangredi, offered the following assessment of Petitioner's condition as of February 18,

2005:

> Ms. Capobres should not have any limitations on sitting,
> standing, walking, hearing, speaking, or traveling. Due to her
> frozen shoulder and Ehlers Danlos Syndrome, however, she is
> limited in her ability to carry or lift heavy objects. The
> orthopedist [Dr. Triggs] may be able to give you further
> information on the patient's physical limitations, however.
>
> Based on my evaluation, Ms. Capobres does not appear to
> have any limitations in regards to her cognitive ability,
> memory, concentration, social interaction or adaptation to her
> surroundings.

AR 164.

This evidence is substantial and provides specific and legitimate reason for

rejecting Dr. Quattrone's opinion that Petitioner could not do a full time job on a

sustained basis. AR 232-38. Moreover, the probative value of Dr. Quattrone's report is

diminished where, as here, the evaluation is dated two years after the date last insured and

does not speak specifically to the Petitioner's condition during the relevant time period.

Accordingly, even though other evidence in the record may support Petitioner's position,

the Court finds that the ALJ's decision to reject Dr. Quattrone's opinion was sound,

---

[4] There is evidence in the Administrative Record reflecting that Petitioner takes issue
with Dr. Moskowitz's credibility. However, this issue is not raised on appeal.

because it was based on specific and legitimate reasons and supported by substantial evidence in the record.

Petitioner also argues that the ALJ erred by failing to call upon the services of a medical advisory to obtain all evidence available to resolve questions concerning Petitioner's onset date. *See* SSR 83-20; *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991). SSR 83-20 states in relevant part:

> Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination. Reports from all medical sources (e.g., physicians, hospitals, and government agencies) which bear upon the onset date should be obtained to assist in determining when the impairment(s) became disabling.

The Ninth Circuit explains that the ALJ must seek additional evidence regarding a claimant's on-set date in circumstances where the record is unclear. "*In the event that the medical evidence is not definite concerning the onset date* . . . SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *DeLorme*, 924 F.2d at 848 (emphasis added).

This rule does not apply where, as here, there is medical evidence for the time period in question. Petitioner was being treated for EDS and its associated symptoms in the relevant time period. Two treating physicians and an examining physician offered evaluations of Petitioner's physical limitations at that time. Certainly Dr. Quattrone had a

different opinion regarding Petitioner's level of impairment; however, Dr. Quattrone did not meet Petitioner until two years after the relevant time period.

In short, the Court finds that the ALJ considered the relevant facts and made a decision based on substantial evidence in the record. Moreover, given the medical records available for the time period in question, the ALJ was not obligated to call upon the services of a medical advisor to make a determination.

## C.     The ALJ's Evaluation of Petitioner's Credibility Regarding Her Symptoms

The ALJ's finding that Petitioner's testimony and subjective complaints were not entirely credible will not be disturbed on appeal, because the ALJ provided clear and convincing reasons for rejecting her testimony.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Meanel*, 172 F.3d at 1113. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence to fully corroborate the alleged severity of the pain. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence

showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin*., 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Court reviews the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound.

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d at 958-59. The ALJ also may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. See Soc. Sec. Ruling 96-7p.

**MEMORANDUM DECISION AND ORDER - 16**

In the instant case, the ALJ determined that there was reliable evidence in the record to support Petitioner's allegations that she experiences some limitations but the evidence did not support Petitioner's allegations that she was so incapacitated during the relevant time period that she was utterly incapable of working. AR 21. The ALJ noted that Petitioner's medically-determinable impairments would have been reasonably expected to produce the alleged symptoms. The ALJ disbelieved Petitioner's testimony concerning the intensity, persistence, and limiting effects of those symptoms.

The ALJ found that two reasons to reject Petitioner's credibility. First, he found her activities of daily living inconsistent with her allegation's of total disability. These activities include home schooling her children, cooking easy meals, grocery shopping with her children's assistance, organizing her house, driving a car, and taking care of her personal needs without assistance. AR 24. While these activities do not necessarily indicate that Petitioner is able to work, the ALJ did not err in concluding that such activities reflect a level of activity generally inconsistent with Petitioner's testimony regarding the severity of her symptoms at that time.

Second, the ALJ noted that the medical records for the relevant time period, including Petitioner's description of her symptoms at the time she was seeking treatment, do not reflect the Petitioner's current, retrospective assessment of her condition at that time. AR 21. Petitioner explained to the ALJ that she suffered from depression at that time but did not tell her doctors, because she did not want to take medication and thought she would get over it. She also did not tell her doctors about the amount she was sleeping

**MEMORANDUM DECISION AND ORDER - 17**

for fear it represented "laziness." AR 21, 25. The ALJ sympathized with Petitioner's attitude and the reasons she provided for not reporting the degree of limitation she was experiencing; however, he ultimately determined that if Petitioner was experiencing the degree of limitation she suggests now, there should be some evidence in the record that she was reporting these limitations to her doctor at the time they were occurring.

In reviewing all of the evidence concerning the severity of Petitioner's symptoms, the ALJ also considered the fact that Petitioner's pain complaints increased after June 30, 2004. In other words, at some point, Petitioner decided she should communicate to her doctor the degree of her limitations. Presumably, the ALJ considered this evidence that her limitations were becoming increasingly severe.

In coming to this conclusion, the ALJ also relied upon Petitioner's hearing testimony when she stated that in June 2004, she was taking pain medication on an as-needed, intermittent basis but by July 2005, she was using it almost daily. AR 25. In light of this evidence, the ALJ determined that Petitioner's condition became progressively worse, but, at the time relevant to the instant decision, she was not completely disabled.

Because the ALJ considered all of the relevant evidence and provided a reasoned analysis supported by substantial evidence in the record, the Court will uphold the decision to reject Petitioner's credibility. A different set of eyes may interpret the evidence in a different manner, but that is of no moment. It is the ALJ who has the experience and expertise in this area and is charged with resolving issues of credibility.

The Court will not upset such a decision, where, as here, it is based on specific and legitimate reasons supported by substantial evidence in the record.

**D.      The ALJ's Assessment of Petitioner's Residual Functional Capacity**

Petitioner challenges the ALJ's residual functional capacity assessment ("RFC"), arguing it does not properly reflect the limitations in her left shoulder.  The ALJ determined that Petitioner had the residual functional capacity to perform light work, requiring lifting 20 pounds occasionally and 10 pounds frequently; she could have stood for up to six hours out of an eight-hour workday; and could have sat for at least six hours in an eight-hour workday.  AR 19.  The ALJ also determined that Petitioner could have occasionally used her right upper extremity for pushing, pulling, or reaching.  *Id.*

Though Petitioner has had frozen shoulder in both her left and right shoulders, the residual functional capacity determination does not include a limitation on pushing, pulling, or reaching for the left upper extremity.  Petitioner claims this omission constitutes reversible error.

The record reflects that Petitioner experienced adhesive capsulitis (frozen shoulder) in her left shoulder in 2001.  AR 131.  Three years later, she was diagnosed with adhesive capsulitis in her right shoulder.  AR 147.  The ALJ noted the separate instances in the decision.  AR 21.  Indeed, this history of bilateral frozen shoulder is repeated throughout the record.

The issue for the Court to determine is whether the ALJ erred by failing to consider the left arm limitations in a residual functional capacity determination for the

**MEMORANDUM DECISION AND ORDER - 19**

relevant time period. Again, the Court must consider the time period at issue: between March 26 and June 20, 2004. The medical records at that time do not reflect any on-going complaints concerning Petitioner's left shoulder. Rather, Petitioner was focused upon the right shoulder and the records reflect that the history of a left frozen shoulder in 2001 had "resolved." AR 154. The ALJ noted this in his decision. AR 21.

Given the nature of Petitioner's condition, it is quite possible that she now experiences range of motion limitations in both shoulders. However, the ALJ did not err by excluding a left shoulder limitation in the residual functional capacity determination. The medical record for the relevant time period provides substantial support for the decision.

## V.  CONCLUSION

The Court has read the record and understands Petitioner's concerns regarding the Social Security review process. However, the record here supports the ALJ's decision, and the Court would abuse its authority if it were to overturn the ALJ's decision, simply because it interpreted the facts in a different manner. That is not how the review process works. Instead, the ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

**MEMORANDUM DECISION AND ORDER - 20**

## VI. ORDER

Based on the foregoing, Petitioner's request for review is DENIED.



DATED: **March 25, 2011.**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge